WIEDENBECK-DOBELIN COMPANY and another vs. MAHONEY and others, imp., Appellants, and YAWKEY-CROWLEY LUMBER COMPANY, Respondent.

SAME vs. MAHONEY and others, imp., Respondents, and AMERICAN CEMENT PLASTER COMPANY, Appellant.

*April 13—May 4, 1915.*

*Mechanics' liens: Lienable and nonlienable items in claim: Separation: Good faith: Form boxes for concrete work: Plaster for other buildings: Application of payments.*

1. In the absence of fraud or bad faith the mere fact that a lien is claimed for some items for which no lien exists, so that the claim is excessive, will not defeat the whole lien, where the lienable and nonlienable items can be ascertained and separated.

2. Where the form boxes used for concrete work did not become a part of the building but remained suitable for further use, a subcontractor was not entitled to a lien on the building for that part of the lumber furnished by him which was used in making such boxes.

3. It appearing that a payment made by the principal contractor to the subcontractor, after the furnishing of the lumber used for such form boxes, was in fact (although not so entered upon the subcontractor's books) a full payment for all materials furnished up to that time, and in the statement attached to the claim for lien that portion of the account being easily separable from the charges for materials thereafter furnished, equity requires that said nonlienable item be treated as paid; and it not appearing that the subcontractor had knowingly included nonlienable material in the claim, the lien is enforceable for the balance due.

4. Findings by the trial court that a subcontractor intentionally included in its claim for lien items for plaster furnished to the principal contractor to be used and which was used in other buildings, and that such items cannot be ascertained and separated from those actually used in the building on which the lien is claimed, are *held* erroneous.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed in part; reversed in part.*

This is an action to foreclose mechanics' and materialmen's

liens on real estate owned by the *Mahoney* sisters and located on State street in the city of Madison.

In the month of April, 1912, the Muskegon Construction & Engineering Company entered into a contract with *Margaret E. Mahoney* and *Josephine S. Mahoney* for the erection of a building on State street in the city of Madison. The *Equitable Surety Company* entered into an undertaking whereby they undertook that the Construction Company would faithfully perform its building contract with the *Mahoney* sisters. The Construction Company entered into a contract with the *Yawkey-Crowley Lumber Company* whereby the *Lumber Company* agreed to furnish the mill work at the price of $5,779 and all the lumber to be used in the building at specified prices per thousand. It appears that the *Yawkey-Crowley Lumber Company* furnished mill work and lumber amounting in value to $9,399.85, of which amount a balance of $6,052.06 remains unpaid. A part of the lumber so furnished was used by the Construction Company for form boxes used in the construction of the cement work of the building. All of the lumber used for such form boxes was delivered between June 6 and September 5, 1912. In July the contractor paid the *Lumber Company* $700, and by January 23, 1913, $3,346 had been paid on the account, which fully paid for all the material delivered under the contract up to this date. The total cost of the material used for the form boxes amounted to $342.51. When the *Lumber Company* gave notice of claim for lien there was nothing showing any distinction of the lumber used for form boxes from that used in the building. The form boxes did not become a part of the building and they have been removed and stored for further use if desired by the owner.

The circuit court found that there is due the *Yawkey-Crowley Lumber Company* for the material furnished under its contract with the Construction Company the sum of $6,052.06, together with the interest thereon from March 27, 1913; that

a portion of such lumber was used for shoring and for form boxes for concrete work; that the part used for shoring was so destroyed that it could not be otherwise used; that the payments made on the bill of the *Lumber Company* before the notice of the claim for lien was filed greatly exceeded the value of the lumber used in form boxes; that from the itemized statement attached to the claim of lien the amount and value used in these form boxes is ascertainable and that equity requires that the payments made on and prior to January 23, 1913, be first applied to this separable nonlienable item. The court accordingly awarded judgment allowing the lien of the *Yawkey-Crowley Lumber Company* for $6,052.06 with interest from March 27, 1913.

As to the claim of the *American Cement Plaster Company,* the court found that this company, under contract with the Construction Company, furnished plaster for the *Mahoney* building and two other buildings which the Construction Company was erecting in the city of Madison. The court also found that the claim of lien filed by the *Cement Plaster Company* against the *Mahoney* sisters, amounting to $465.40, included charges for plaster used in the other buildings and that this *Plaster Company's* representative knew that the claim for lien wrongfully included items for material not used in the *Mahoney* building, and "that it is not possible to ascertain from the notice and claim for lien the amount of plaster used in the *Mahoney* building." It appears that the *Cement Plaster Company's* Wisconsin agent, Healy, took a written order from the Construction Company by its president, Olson, on July 16, 1912, for thirty-five tons of cement plaster at $5.50 per ton, with a stipulation to credit ten cents for each empty bag returned. The order contained the memorandum on its face, "For *Mahoney* Building." This writing was sent to the *Plaster Company's* office at Fort Dodge. Subsequent orders added to the quantity of this order. The material was used in the *Mahoney* and the two other buildings erected by the

Construction Company at Madison.    On October 17, 1912,
$135 was received by the *Plaster Company* from the Construc-
tion Company in full settlement for the cement plaster used
in the Badger Creamery building, one of the other buildings
erected by the Construction Company.    On January 15, 1913,
the secretary of the *Plaster Company* sent, from its head office
at Fort Dodge, a statement of the balance due the *Plaster
Company* for cement plaster to its attorneys at Madison, Wis-
consin, amounting to $465.40.    On January 18, 1913, these
attorneys filed notice of claim for lien against the *Mahoney*
building, attaching this statement.    About this same time
Healy had a settlement with the Construction Company and
received payment of $114 as balance due for the plaster used
in the De Longe building, which had been included in the
statement of the secretary of January 15th and sent to the
attorneys at Madison.    It also appears that the *Plaster Com-
pany* at its home office gave immediate credit for this sum.
There is nothing shown to indicate that the secretary and of-
ficers at the home office had any knowledge, when they sent
the statement to their attorneys on January 15, 1913, that the
claim embraced any charge for material not used in the *Ma-
honey* building, nor does it appear that Healy did anything
prior to the notice of claim for lien by the attorneys warrant-
ing the inference that he sought to charge the *Mahoney* sisters
with items of material which he knew were not used in the
construction of the *Mahoney* building.    The evidence of the
representative of the Construction Company establishes that
the sum of $204.80 is the balance due for plaster used in the
construction of the *Mahoney* building.

For the appellant *American Cement Plaster Company* there
were briefs by *Buell & Lucas,* and oral argument by *F. W.
Lucas.*

There were briefs signed by *Olin, Butler, Stebbins, Curkeet
& Stroud* and *La Follette & Rogers,* attorneys for *Margaret E.
Mahoney* and *Josephine S. Mahoney,* and by *Welton, Marks &*

*Porter,* attorneys for *Equitable Surety Company;* and the cause was argued orally by *C. E. Marks* and *W. L. Curkeet.*

*Charles N. Brown,* attorney, and *Sam T. Swansen,* of counsel, for the respondent *Yawkey-Crowley Lumber Company.*

SIEBECKER, J. The trial court found that the material furnished by the *Yawkey-Crowley Lumber Company* and used by the Construction Company for form boxes is not lienable because it was not incorporated into the building; that the boxes were removed and remain fit for use for construction of other buildings. The evidence sustains this finding of fact. It is claimed by the owners of the building that the *Lumber Company* forfeited their right to any lien on their property because they knowingly included the material used for these form boxes in their claim for lien as material used in the construction of the building. This contention must fail for the reasons (1) that the material for form boxes was fully paid for by the Construction Company on January 23, 1913, and (2) it does not appear that the *Lumber Company* knowingly made any claim for such material in their notice of claim for lien. It is without dispute in the evidence that the payment of $800 to the *Lumber Company* on January 23d constituted in fact full payment of all that was then due for material furnished by the *Lumber Company* under its contract. The omission of the *Lumber Company* to enter it on its books as a full discharge of its account to date against the Construction Company does not prevent this result. The fact is, it was a payment of its claim and should be so regarded under the facts and circumstances of the case. There is no difficulty in separating this portion of the account from the charges for material thereafter furnished, and the statement of account attached to the notice of claim for lien is in no way open to the objection that lienable and nonlienable items of material as included in the account cannot be ascertained and separated. The circuit court properly held "that it is pos-

sible from such notice and claim to ascertain the amount and value of the lumber used in these form boxes; that equity requires that the payments be first applied to these separable nonlienable items." *North v. La Flesh,* 73 Wis. 520, 41 N. W. 633. The facts of this case clearly distinguish it from the case of *Rinzel v. Stumpf,* 116 Wis. 287, 93 N. W. 36. In that case the court points out the reason for loss of lien by the claimant, namely: "The trouble here is that there is no evidence presented in the bill of exceptions which enables us to fix the price of the tables or the shelving. The bid of the plaintiff was to do the work for a lump sum; hence, it not appearing how much the lienable and nonlienable articles were to cost, the judgment cannot stand." The decisions of this court declare that the mechanic's lien laws provide new and additional remedies to those of the common law and are to be liberally construed to accomplish their equitable purpose of aiding materialmen and laborers to obtain compensation for material used and services bestowed upon property of another and thereby enhancing its value. The right to liens recognized in our law rests on principles of equity and business necessity. In the enforcement of this right courts recognize its nature and impose on parties asserting it the duty that they "must come into equity with clean hands." If the party has complied with the statute by giving the required notice and properly filed his claim for lien, this right thereto is not to be defeated by innocent mistakes. The courts generally declare that, ". . . in the absence of fraud or bad faith, the mere fact that a lien is claimed for some items for which no lien exists, and is therefore excessive, will not defeat the whole lien." 20 Am. & Eng. Ency. of Law (2d ed.) 411; *Springer L. Asso. v. Ford,* 168 U. S. 513, 18 Sup. Ct. 170; *Gerard B. Allen & Co. v. Frumet M. & S. Co.* 73 Mo. 688.

The court found as a fact that the *American Cement Plaster Company* knowingly and intentionally included in its claim

for lien against the property of the *Mahoney* sisters items for plaster which the company had supplied to the Construction Company to be used and which was used in other buildings, and that these items cannot be ascertained and separated from those actually used in and for the *Mahoney* building.   We think the court erred in these findings of fact.   From the evidence, as shown in the above statement of facts, it appears that no one at the home office of the *Cement Plaster Company* had any knowledge that the statement of items for which a lien was claimed contained charges for plaster not used in the *Mahoney* building.   Nor does the evidence disclose that Healy knew a claim of lien was being made for such items.   The transactions of the company and its attorneys indicate with reasonable distinctness that they were mistaken in believing that the balance due on the company's account was for plaster used in the *Mahoney* building.   True, Mr. Healy may have been negligent in not taking the necessary steps to separate from the charges embraced in the claim of lien against the *Mahoney* building those actually used in another building, but there is no evidence that he did so with intent to defraud the *Mahoney* sisters.   We are of the view that inclusion of the items of plaster used in the De Longe building in this claim of lien is attributable to inadvertence and mistake and without any intent to defraud and therefore should not defeat the *Cement Plaster Company's* right to a lien for the material which was in fact used in and for the erection of the building. The evidence shows definitely what amount remained unpaid on the account for material used in the *Mahoney* building after the payment of the $114 due for material used in the De Longe building and the credit of $146.60 for sacks returned.   We discover no difficulty in ascertaining from the statement accompanying the notice of claim of lien and the deduction of these last two credits that the amount due and unpaid for plaster used in the *Mahoney* building is $204.80.

The judgment of the trial court denying the *Cement Plaster Company's* right to a lien on the premises involved must be reversed.

*By the Court.*—That part of the judgment from which *Margaret E. Mahoney, Josephine S. Mahoney,* and *Equitable Surety Company* appealed is affirmed, and that part from which the *American Cement Plaster Company* appealed is reversed, and the cause remanded with directions to award the *American Cement Plaster Company* a lien on the premises involved in the action and the right of this company to join in the foreclosure and sale of such premises as the judgment awards to other lienors.