R. FREDRICK REDI-MIX, INC., a Wisconsin corporation, Plaintiff-Respondent-Petitioner,

v.

Thomas J. THOMSON and Loretta Thomson, his wife, d/b/a Thomson Realty, a sole proprietorship, K & H Construction, Inc., a Wisconsin corporation, Don Teffer Construction Corporation, a Wisconsin corporation, Mutual Savings & Loan Association of Wisconsin and Great Midwest Savings & Loan Association, Defendants-Appellants.†

Supreme Court

*No. 77-885. Argued May 5, 1980.—Decided June 3, 1980.*

(Also reported in 292 N.W.2d 648.)

---

† Motion for reconsideration denied, without costs, on June 27, 1980.

716

For the respondent-petitioner there was a brief by *Patrick F. Brown* and *Love, Brown, Love & Phillips* of Waukesha, and oral argument by *Patrick F. Brown*.

For the appellants there was a brief by *William F. Scholl* and oral argument by *Mark C. Young*, both of Wauwatosa.

COFFEY, J.  This is a review of an action to foreclose a construction lien that R. Fredrick Redi-Mix, Inc. (Redi-Mix), claimed on a two building apartment complex in New Berlin owned by Thomas and Loretta Thomson, the defendants.  The trial court entered judgment granting foreclosure of Redi-Mix's construction lien on the premises.  The court of appeals reversed the trial court's judgment.

The record establishes that Redi-Mix, a Wisconsin Corporation, is engaged in the business of manufacturing, selling and distributing ready mix concrete, and furnished the concrete, wire mesh and reinforcing rods used in the construction of the apartment complex.  The complex consisted of two buildings referred to as the "east" and "west" buildings.  Each of the buildings was located on an adjacent parcel of land with separate legal descriptions and addresses. [1]

Initially, Redi-Mix furnished materials to K & H Construction, Inc. (K & H), the first masonry and concrete subcontractor, from March 31st until November 26, 1971 for use in the construction of the apartment complex. During this period, K & H experienced financial difficulties and defaulted in their payments to Redi-Mix for the materials provided.  Thereafter, the Thomsons dis-

---

[1] The address of the "east" building is 15000 West Cleveland Avenue while the address of the "west" building is 15100 West Cleveland Avenue.

charged K & H from the construction project and hired the Don Teffer Construction Corporation (Teffer) to complete the masonry and concrete construction work. Redi-Mix, at the request of Teffer, continued to supply the concrete and materials to complete the construction of the two buildings on the project site. Redi-Mix commenced delivery of materials to Teffer in November of 1971, with the last delivery being made on August 4, 1972 and during this period Teffer made timely payments for all the materials supplied.

Because of K & H's default in payments, Redi-Mix was compelled to institute legal action and served a notice of intent to file a lien claim on April 21, 1972 on the Thomsons, owners of the property. Redi-Mix in compliance with sec. 289.06(1), Stats., on May 25, 1972 filed a lien claim against the "west" building rather than the "east" building for the labor and materials furnished to K & H for the building project. Shortly thereafter, Redi-Mix became aware of a mistake in their failing to identify the proper building in the lien claim and realized that the labor and materials, the subject of the lien claim, were used in the construction of the "east" building rather than the "west" building. To rectify this mistake, on August 30, 1972, Redi-Mix served an amended (second) notice of intent to file a lien and on November 2, 1972 filed an amended lien claim for labor and materials furnished between June 25, 1971 and August 4, 1972 on both the "east" and the "west" buildings.

Almost two years later, on May 7, 1974, Redi-Mix commenced a lawsuit to foreclose its lien against the Thomsons' property and requested a judgment in the amount of $12,223.84 plus interest and costs. The defendants answered the complaint with the filing of a general denial.

In June of 1974 the mortgagees of the properties, the subject of the lien foreclosure action, Mutual Savings and Loan Association and Great Midwest Savings and

Loan, pursuant to sec. 289.08 (1) Stats.,[2] deposited the sum of $15,279.80 with the Waukesha county court as security to insure payment of Redi-Mix's construction lien. The court, after a hearing on June 10, 1974, ordered the lien claim on the real estate satisfied of record and also discharged the lis pendens on file against the property. The construction lien claim, pursuant to sec. 289.08 (4), Stats.,[3] thus became attached to the security (money) on deposit with the clerk of courts.

[2] Sec. 289.08 (1) provides as follows:

"**Release of lien; undertaking.** (1) The person against whom a lien is claimed or any other interested party may file with the clerk of court in whose office the claim for lien is filed an undertaking executed by 2 or more sufficient sureties to the effect that the person against whom the lien is claimed shall pay the amount of the claim and all costs and damages which may be awarded against him on account of the lien or in lieu thereof deposit with the clerk of the court a sum of money, certified check or negotiable government bonds in par value equal to 125% of the claim for lien. The court in which any action to foreclose the lien may be brought shall determine any question of sufficiency of the sureties if exception is taken thereto by the lien claimant within 10 days after notice of the filing of such undertaking or deposit of other security and may upon notice and upon motion of any party, order any sum of money deposited to be invested. The depositor shall be entitled to any income from the investments, certified check or negotiable U. S. government bonds deposited and the clerk shall pay the income to the depositor without order when received or, in the case of coupons, as the income becomes due."

[3] Sec. 289.08 (4), Stats., provides as follows:

"(4) Any action brought after the furnishing of security or pending at the time of the furnishing thereof in accordance with this section shall proceed as if no security had been furnished, except that after the time within which exceptions may be taken to the security, or pursuant to order of the court upon any exception so taken, the clerk shall satisfy the claim for lien of record and discharge any lis pendens filed, and *except that the lien thereupon shall attach to the security* and the amount adjudged due in the proceeding for foreclosure thereof shall be satisfied out of the security, and the property described in the lien claim shall thenceforth be entirely free of the lien and shall in no way be involved in subsequent proceedings." (Emphasis supplied.)

The trial court found that the plaintiff, Redi-Mix, had supplied "materials and labor," including the ready mix concrete used in the construction of the apartment buildings on the defendants' property. The court further found that there remains due and payable to the plaintiff [Redi-Mix] from K & H Construction, Inc., the principal amount of $12,223.84, plus interest and costs of $3,766.38, for materials and labor furnished in the construction of the "east" building. The court ruled that the amended lien claim, filed November 2, 1972, secured payment of the principal amount found due and owing. The court further found the amount of the claim was reasonable. The court entered judgment in favor of the plaintiff, Redi-Mix, and ordered payment of the principal sum, including interest and costs, from the security fund in satisfaction of the judgment.

The defendants, Thomsons, appealed from the adverse judgment awarding Redi-Mix the sum of $15,990.22 and the court of appeals reversed. The court of appeals held that Redi-Mix's lien was unenforceable as not having been perfected in accordance with the statute, sec. 289.06, Stats. Specifically, the court of appeals concluded that:

1. The original notice of intent to file a lien claim and the lien claim itself were unenforceable on their face because the legal descriptions of the building and property in the documents were inaccurate. The materials that were the subject of this lien foreclosure action had been used exclusively in the construction of the "east" building rather than the "west" building. Therefore, the original lien notice and lien claim were in error and thus unperfected and unenforceable.

2. The court of appeals further ruled that the amended notice and claim for lien, containing a description of both the "east" and "west" building properties, were also unenforceable because the plaintiff failed to file the lien claim within the statutorily mandated time

limit of six months from the date of delivery of the last labor or materials (on or before May 26, 1972), pursuant to sec. 289.06(1), Stats. The court of appeals concluded that since Redi-Mix's lien arose as a result of the unpaid labor and materials furnished to K & H for the construction project, as opposed to the materials furnished to Teffer, Redi-Mix was required to file its lien claim within six months from the date it last delivered labor or materials to K & H, the original masonry contractor, rather than Teffer, the succeeding masonry contractor:

". . . the last supplies were delivered to K & H on November 26, 1971. The amended lien claim was filed November 2, 1972, almost a year later. Redi-Mix argues that materials were delivered to the east building in August 1972 and, therefore, the lien claim was timely. We cannot accept that argument. The materials supplied in August 1972 were delivered, not to K & H, but to its successor subcontractor, Don Teffer Construction Corporation. Since Redi-Mix admits that all materials furnished to Don Teffer were paid for and that the lien does not relate to them, the deliveries made to Don Teffer cannot be used to extend the time in which to file the lien claim based on materials furnished to K & H. We read sec. 289.06(1), Stats., to mean the lien claim must be filed within six months of the date the last materials *for which the lien is claimed* were furnished."

3. The court of appeals also held that the amended notice and lien claim failed to rectify the mistake in the legal description on the grounds that it did not effectively relate back to the original notice and claim for lien and therefore it was not timely filed, stating as follows:

". . . amendments to lien notices and claims, made after the statutory time limit has passed but before an action is commenced, are invalid when the amendment changes the land against which the lien is claimed."

In view of the court's ruling that the lien against the east property was not perfected, due to Redi-Mix's failure to

timely file its amended lien claim or the failure to include an accurate legal description of the "east" building in the original lien notice and lien claim, the court of appeals reversed the trial court's judgment granting Redi-Mix's construction lien. It is from this decision that Redi-Mix petitions the court to review.

*Issue*

Does the six-month time limit for filing a lien claim, provided in sec. 289.06(1), Stats., commence on the date the claimant last furnished labor and materials for use on the construction project (August 4, 1972) or does it commence on the date the last unpaid materials and labor, the subject of the lien claim, were furnished?

On review, the petitioner, Redi-Mix, contends that the concrete and materials furnished to Teffer (the second subcontractor) were part of the continuing construction project. Thus, they contend that the materials furnished to the second subcontractor (Teffer) on August 4, 1972 for the same construction project constituted the "last labor or materials" furnished for purposes of establishing the date from which the six-month time period for filing lien claims commences, pursuant to sec. 289.06(1), Stats.[4] Redi-Mix contends that the fact that it had been

---

[4] Sec. 289.06(1) provides as follows:

"**Filing claim and beginning action; notice required before filing; contents of claim document.** (1) No lien under s. 289.01 shall exist and no action to enforce the same shall be maintained unless within 6 months from the date the lien claimant furnished the last labor or materials a claim for such lien is filed in the office of the clerk of circuit court of the county in which the lands affected thereby lie, and unless within 2 years from the date of filing a claim for lien an action is brought and summons and complaint filed therein. Such claim for lien may be filed and docketed, and action brought, notwithstanding the death of the owner of the property affected thereby or of the person with whom the original contract was made, with like effect as if he were then living.

". . . ."

paid in full for the materials delivered from December, 1971 to the 4th of August, 1972 is irrelevant and the date that the last materials were supplied to the project establishes the date for filing lien claims. In support of this position, Redi-Mix cites sec. 289.01(3), as establishing that a construction lien attaches to the property that has been improved as a result of the labor and materials provided by the supplier regardless of whether one or more subcontractors were involved in the construction project.

A construction lien is a remedy created by statute to insure payment to contractors, subcontractors, tradesmen, laborers and materialmen who have furnished labor or materials in good faith for the improvement of another's property. Sec. 289.01(3), Stats., recites the:

"EXTENT AND CHARACTER OF LIEN. Every person who performs any work or procures its performance or furnishes any labor or materials or plans or specifications for the improvement of land, and who complied with s. 289.02, shall have a lien therefor on all interests in the land belonging to its owners. The lien extends to all contiguous land of the owner, but if the improvement is locally wholly on one or more platted lots belonging to the owners, the lien applies only to the lots on which the improvement is located."

Following the completion of the excavation, pursuant to the statute, Redi-Mix's, the supplier of the concrete and other materials used in the construction and improvement of the defendants' land, construction lien on the land arose at the time. *See:* sec. 289.01(4), Stats.[5]

---

[5] "289.01 Construction liens. . . .

"(4) PRIORITY OF CONSTRUCTION LIEN. The lien provided in sub. (3) shall be prior to any lien which originates subsequent to the visible commencement in place of the work of improvement, except as otherwise provided by ss. 215.21(4)(a) and 706.11(1). When new construction is the principal improvement involved,

724

However, for a construction lien to be enforceable, it must be perfected in compliance with the provisions of sec. 289.06.[6]

commencement is deemed to occur no earlier than the beginning of substantial excavation for the foundations, footings or base of the new construction, except where the new construction is to be added to a substantial existing structure, in which case the commencement is the time of the beginning of substantial excavation or the time of the beginning of substantial preparation of the existing structure to receive the added new construction, whichever is earlier. The lien also shall be prior to any unrecorded mortgage given prior to the commencement of the work of improvement, if the lien claimant has no actual notice of the mortgage before the commencement. Lien claimants who perform work or procure its performance or furnish any labor or materials or plans or specifications for an improvement prior to the visible commencement of the work of improvement shall have lien rights, but shall have only the priority accorded to other lien claimants."

[6] Sec. 289.06, Stats., reads as follows:

"**Filing claim and beginning action; notice required before filing; contents of claim document.** (1) No lien under s. 289.01 shall exist and no action to enforce the same shall be maintained unless within 6 months from the date the lien claimant furnished the last labor or materials a claim for such lien is filed in the office of the clerk of circuit court of the county in which the lands affected thereby lie, and unless within 2 years from the date of filing a claim for lien an action is brought and summons and complaint filed therein. Such claim for lien may be filed and docketed, and action brought, notwithstanding the death of the owner of the property affected thereby or of the person with whom the original contract was made, with like effect as if he were then living.

"(2) No lien claim may be filed or action brought thereon unless, at least 30 days before timely filing of the lien claim, the lien claimant serves on the owner, personally or by registered mail with return receipt requested, a written notice of intent to file a lien claim. The notice is required to be given whether or not the claimant has been required to and has given a previous notice pursuant to s. 289.02. Such notice shall briefly describe the nature of the claim, its amount and the land and improvement to which it relates.

"(3) Such a claim for lien shall have attached thereto a copy of any notice given in compliance with s. 289.02 and a copy of the notice given in compliance with sub. (2), and shall contain a

This statute establishes three necessary requirements for the establishment of a lien right. First, the statute provides that the claimant or person claiming the lien must serve a written notice of intent to file a lien claim, containing a brief description of ". . . the nature of the claim, its amount and *the land and improvement to which it relates* . . . ," on the owner of the property at least 30 days before filing the lien claim. *See:* sec. 289.06(2), Stats. Secondly, following the filing of the notice of intent, the *lien claim must be filed within 6 months from the date the lien claimant furnished the last labor or materials* and must contain:

1. a statement of the contract or demand upon which it is founded;

2. the name of the person against whom the claim is made;

3. the name of the claimant and any assignee;

4. *the last date of the performance of any labor or the furnishing of any materials* (Emphasis supplied) ;

5. *a legal description of the property against which the lien is claimed* (Emphasis supplied) ;

6. the amount claimed; and

7. all other material facts.

*See:* sec. 289.06(1) and (3), Stats.

Thirdly, any action to foreclose the lien must be commenced with the filing of a summons and complaint, within 2 years from the date of the filing of the lien claim. *See:* sec. 289.06(1), Stats.

statement of the contract or demand upon which it is founded, the name of the person against whom the demand is claimed, the name of the claimant and any assignee, the last date of the performance of any labor or the furnishing of any materials, a legal description of the property against which the lien is claimed, a statement of the amount claimed and all other material facts in relation thereto. Such claim document shall be signed by the claimant or by his attorney, need not be verified, and in case of action brought, may be amended, as pleadings are."

Initially, we must deal with the question of what is the commencement date of the 6-month time limit for filing a lien claim, pursuant to sec. 289.06(1), Stats. Redi-Mix contends that the 6-month time period commences on the date they last provided materials or labor to the project on August 4, 1972, and thus they had six months from that date (or until February 4, 1973) to file the lien claim. Conversely, the Thomsons contend that the six month period for the filing of a lien claim should be computed from the date the last *unpaid* materials or supplies were provided to the project. In this case the defendants state that the last unpaid materials were provided to K & H on November 26, 1971, the date they were discharged from the project, and thus Redi-Mix was required to file their lien claim on or before May 26, 1972. Since the materials supplied to K & H were the subject of the lien claim, they contend that any subsequent delivery of materials or labor to Teffer is irrelevant.

In *Builder's Lumber Co. v. Stuart,* 6 Wis.2d 356, 94 N.W.2d 630 (1959) this court held that:

"In Wisconsin the *lien laws* are remedial in character and *are to be liberally construed. Findorff v. Fuller & Johnson Mfg. Co.,* 212 Wis. 365, 248 N.W. 766; *City Lumber & Supply Co. v. Fisher,* 256 Wis. 402, 41 N.W. (2d) 285." (Emphasis supplied.) *Id.* at 361. *See also: State v. Lunz,* 86 Wis.2d 596, 273 N.W.2d 767 (1979).

Moreover, prior case law establishes that a liberal construction of the statute should be employed to effectuate the legislative intent to protect the claims of tradesmen, laborers and materialmen for work or materials provided in the improvement of real property. 57 C.J.S., Mechanic's Lien §4 (1948). In *State v. Engler,* 80 Wis.2d 402, 259 N.W.2d 97 (1977), this court held that where a statute is clear on its face " 'It is impermissible to

apply rules of statutory construction [judicial interpretation] to ascertain legislative intent . . . .'" *Id.* at 406. We believe the statute (sec. 289.06(1), Stats.) is clear and unambiguous on its face. The statute expressly provides that the lien claim should be filed *"within 6 months from the date the lien claimant furnished the last labor or materials."* The clear and express language of the statute dictates that the phrase "last labor or materials" refers to the last labor or materials furnished to the construction project and is not limited exclusively to "materials or labor" for which the claimant has not received payment. Therefore, the statute should not be interpreted as requiring that the lien claim must be filed within 6 months of the date the last materials *for which the lien is claimed were furnished* as the court of appeals held.

In this case the record establishes that Redi-Mix continued to furnish concrete and other building materials for use in the construction of the apartment complex from June 25, 1971 until August 4, 1972, long after K & H had been discharged. A clear reading of the statute mandates that the materials provided on August 4th constitute the "last labor or materials" Redi-Mix furnished on the project and thus, pursuant to the language of the statute, they (Redi-Mix) had 6 months from that date within which to file its lien claim.

In *Usiak v. Kubiak,* 198 Wis. 600, 225 N.W. 158 (1929), this court held that the 6-month statutory period for filing a lien claim commences to run from the date the materialman last provided material or labor to the construction project, even where these last materials have been paid for in full. In that case the defendant, a lumber dealer, furnished a large amount of lumber and material between August 21, 1924 and January 24, 1925 for

the construction of a building. In October of 1925, March, April and September of 1926, the defendant continued to supply a small amount of additional materials for which he received payment on delivery. At the time of these subsequent deliveries, a large balance was still due and owing the lumber dealer for the previously furnished materials. This court held:

". . . that the payment of one only of many items all furnished under one building arrangement, as in this case, should not destroy the right to obtain the benefit of such a statutory remedy. [sec. 289.06(1), Stats.[7]]." *Id.* at 602.

In the present case the record demonstrates that the materials supplied to K & H and those supplied to Teffer were all furnished and used on the same continuing construction project. Despite the fact that there were two separate buildings in this case, it should be noted that construction of the buildings was considered and treated as one construction project in all respects, therefore, Redi-Mix provided labor or materials for one "building arrangement" or construction project and thus the holding and reasoning set forth in *Usiak v. Kubiak, supra,* is applicable to this case.

Lastly, the defendants cite to the fact that Redi-Mix's most recent delivery of materials to the project (August 4, 1972) was made to another subcontractor. The Thomsons contend that Redi-Mix's lien claim was filed to insure payment for the materials previously supplied to K & H, therefore, calculating the 6-month period for filing lien claims from the time Redi-Mix last delivered materials to this second subcontractor (who had made

[7] "Sec. 289.06 . . . (1). No lien hereby given shall exist and no action to enforce the same shall be maintained unless . . . within six months . . . from the date of the last charge for performing such work and labor or of the furnishing of such materials a claim for such lien shall be filed as, . . ."

payment in full) would defeat the purpose of sec. 289.06 (1), Stats.

In *Prince v. C. G. Bretting Mfg. Co.,* 203 Wis. 504, 234 N.W. 699 (1931), this court held that a construction or materialmen's lien, for improvements to property, attaches to the real estate, including any buildings located thereon. *See:* sec. 289.01(3), Stats. In this case, the testimony reveals that both the unpaid materials supplied to K & H and the paid materials furnished to Teffer were used in the continuing construction project, including the "east" building property. Therefore, since a lien claim arises against or attaches to the property, the fact that there was a change in subcontractors makes no difference for purposes of determining when the 6-month time period for filing lien claims commences, provided the materials supplied to the second subcontractor were used on the same construction project.

Thus, in light of the statute, sec. 289.06(1), Stats., *Usiak v. Kubiak, supra,* and the ruling Wisconsin case law favoring liberal construction of this lien statute, we hold that the 6-month time period for filing a lien claim runs from the date Redi-Mix supplied the last labor or materials (August 4, 1972) for use on the construction project, including both the "east" building and "west" building. Thus, Redi-Mix had until February 4, 1973, to file its claim for lien and since the amended lien claim, containing the proper legal description—the "east" building property—was filed well within the 6-month filing period, (November 2, 1972) therefore, Redi-Mix's lien claim was valid and enforceable.

*By the Court.*—The decision of the court of appeals is reversed and the judgment of the circuit court is reinstated.

The following memorandum was filed June 27, 1980:

PER CURIAM *(on motion for reconsideration)*. The defendants-appellants have called our attention to the fact that the decision of this court reinstates the judgment of the circuit court. They have requested that we remand the case to the court of appeals for the determination of additional issues which they presented to the court of appeals, but which were not resolved by that court because the court disposed of the matter on a single issue.

The defendants-appellants raised four issues before the court of appeals:

(1) Was the trial court's finding that Redi-Mix had made its last deliveries to the east rather than the west building against the great weight and clear preponderance of the evidence?

(2) Did Redi-Mix perfect its lien rights?

(3) Did Redi-Mix waive its lien rights?

(4) Did Redi-Mix fail to prove its damages?

The court of appeals held that the evidence was sufficient to support the trial court's finding regarding the last delivery to the construction project. The court of appeals also concluded that Redi-Mix had not perfected its lien rights in accordance with sec. 289.06, Stats., for the following reasons:

(1) The original notice of intent to file a lien claim and the lien claim itself were unenforceable on their face because the legal descriptions of the building and property in the documents were inaccurate;

(2) The amended notice and claim for lien, containing a correct description of the property, were also unenforceable because Redi-Mix failed to file the lien claim within the statutory time limit of six months from the date of delivery of the last labor or materials, pursuant to sec. 289.06(1);

(3) The amended notice and lien claim failed to rectify the mistake in the legal description because it did

not effectively relate back to the original notice and claim for lien and therefore it was not timely filed.

Because the court of appeals held that the original notice and lien claim were insufficient for failure to describe the correct property, the court did not reach the issue of whether the defendants-appellants were effectively served with the notice and lien claim. And because the court of appeals held that Redi-Mix did not perfect its lien rights, the court did not address the issues concerning waiver of lien rights and proof of damages.

Redi-Mix petitioned this court to review only the ruling of the court of appeals that Redi-Mix had failed to perfect the construction lien because the lien claim had not been filed within six months from the date of delivery of the last labor or materials. We concluded that Redi-Mix's amended notice and claim for lien were filed within the statutorily mandated six month time limit, thereby perfecting the lien claim, and consequently we reversed the decision of the court of appeals. We also reinstated the judgment of the circuit court.

The decision of the court of appeals rested on its conclusion that Redi-Mix had not perfected its lien rights. The issues concerning sufficiency of service of the notice and lien claim, waiver of lien rights, and proof of damages were never considered by the court of appeals, and, therefore, were not subject to review by this court. Since we held that Redi-Mix's lien claim had been perfected, we believe that the defendants-appellants should now be given the opportunity to have the remaining issues resolved by the court of appeals. Proper disposition of this case thus requires that it be remanded to the court of appeals for a determination of those issues. To this extent, we modify our decision.

No costs awarded to any of the parties.